IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 20 2007

JAMES N. HATTEN, Clerk
By: [signature], Deputy Clerk

JEFFREY GRABLE,

    Plaintiff,

v.

GREGORY J. BARRO, PLC,
a Louisiana business entity,

    Defendant.

CIVIL ACTION NO.

1:05-CV-3133-JEC

# ORDER & OPINION

This case is presently before the Court on plaintiff's Motion for Entry of Final Judgment Including an Award of Attorney Fees and Costs [10]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion for Entry of Final Judgment Including Award of Attorney Fees and Costs [10] should be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiff brought suit alleging violations of the federal Fair Debt Collection Practices Act (hereinafter "FDCPA"), 150 U.S.C. §§ 1692, *et seq.* (Compl. [1].) Plaintiff previously had an account with BellSouth, with an alleged balance due of $58.39. (*Id.* at Ex.

AO 72A
(Rev.8/82)

A). BellSouth assigned the account to defendant Barro. (*Id.*) On December 13, 2004, defendant wrote plaintiff in an effort to settle the account. (*Id.*) Defendant threatened plaintiff with a possible lawsuit unless plaintiff paid the account in full. (*Id.*) The letter stated that if defendant decided to sue, plaintiff risked paying all court costs of a judgment entered against him, and having his wages garnished. (Compl. [1] at Ex. A.) On December 29, 2004, defendant wrote plaintiff again, indicating that plaintiff must contact defendant's office within 48 hours. (Compl. [1] at ¶ 22, 27).

On December 12, 2005, plaintiff filed this action alleging the letters violated the FDCPA because: 1) defendant intended the letters to give a false impression that they came from, or were meaningfully authorized by, an attorney; 2) the letters included unauthorized threats of litigation; and 3) defendant did not effectively communicate mandatory verification information. (*Id.* at ¶¶ 14, 21, 26-29, 36-47, 54-56.) Plaintiff sought damages and an award of attorney fees, costs, and litigation expenses. (Compl. [1] at ¶ 64.)

On January 18th, 2006, defendant filed an initial Offer of Judgment for $750.00 [2].[1] On January 19th, 2006, plaintiff filed a

---

[1] On January 19, 2006, defendant filed a Second Offer of Judgment for $800.00 [3].

Notice [4] accepting defendant's initial offer.[2] The Agreement entered into on January 19, 2006, resolved "any and all actual damages and statutory damages, plus costs and attorney's fees as to be determined by the Court." (Def.'s First Offer of J.[2], Pl.'s Br. in Supp. of Mot. for J. and Fees [10] at 2).

On February 21, 2006, the Court administratively terminated the action, to be reopened within thirty (30) days if settlement was not consummated [5]. On March 16, 2006, plaintiff filed a Motion to Reopen for the limited purpose of entering a Final Judgment and also for issuing an Order to determine the amount of attorney's fees and costs [6].[3] Plaintiff's Motion included an unsigned brief in support of attorney's fees that was filed along with the properly-signed Motion to Reopen. (Pl.'s Mot. to Strike [9] at 1). Although this brief contained the correct caption, all other averments within it referred to a different case. That is, the brief indicated that the Court had entered judgment for $1,000, (*Id.* at 1), when the Court had entered no judgment and the parties had settled the case for $750.

---

[2] Plaintiff accepted the January 18, 2006 offer before plaintiff was electronically served with the second offer (Pl.'s Mot. for Entry of J. Including Fees and Costs ("Pl.'s Mot. for J. and Fees" [10] at 2). Plaintiff makes no claim to the additional $50.00 offered in the Second Offer of Judgment. (*Id.*)

[3] The settlement could not be concluded because the parties could not reach an agreement with respect to attorney's fees. (Pl.'s Br. in Supp. of Mot. for J. and Fees [10] at 3-4).

3

The brief further requested attorney's fees in the amount of $6,742.50, plus costs of $201.30 (*Id.* at 2). Subsequently, plaintiff's counsel indicated that the actual attorney's fees incurred were $3,948.50, with costs of $314.35. *Infra* at 5. Finally, the signature line on the brief was for a Kris Skaar, not plaintiff's counsel, James Feagle.

On March 30, 2006, defendant filed his Response asking that the award of attorney's fees be denied. (Def.'s Resp. to Pl.'s Mot. to Reopen [7]). Defendant alleged that plaintiff's counsel had obviously filed a brief from a different case, noting that: 1) the facts cited in plaintiff's Motion to Reopen were wrong; 2) the amount of the judgment was wrong; 3) the Motion cited another counsel of record; 4) and plaintiff had failed to provide the Court with sufficient information to determine the lodestar amount. (*Id.* at ¶¶ 2-3.)

On April 4, 2006, plaintiff filed a Motion to Strike Pages Three through Ten of plaintiff's Motion to Reopen (Mot. to Strike [9] at 1), noting that the brief from a different case had been inadvertently filed. The Court granted this Motion on April 12, 2006 [12].

On April 10, 2006, the Court issued an Order [11] granting plaintiff's original Motion to Reopen [6] and an Order [12], on April 12, 2006, granting the plaintiff's Motion to Strike all but the first

4

two pages of his motion to reopen.[4]

In Plaintiff's Brief in Support of Motion for Judgment and Fees [10], counsel notes that he has 15 years experience and has handled consumer rights cases "almost exclusively" for ten years. Counsel states that he expended 14.9 hours in representing his client and requests that he be paid at a rate of $265 per hour, for a total of **$3,948.50 in attorney's fees**, plus **costs** in the amount of **$314.35**. (*Id.* at 14.)

In support of his claimed rate of $265 per hour, plaintiff's counsel cites four uncontested judgments in which he was awarded fees in the amount of $265 per hour. (*Id.* at 11.) Additionally, plaintiff's counsel cites a 2004 case, which was the last case in which his fee application was contested, wherein he was awarded $195 per hour. (*Id.*) Plaintiff's counsel asserts that the $70 dollar per hour increase over his last contested hourly rate is merited because of his additional experience in the last two years. Plaintiff's counsel, James Feagle, also submits his own affidavit and that of

---

[4] The Court's Order [11] granting plaintiff's Motion to Reopen Case had noted that this motion provided information that was obviously not correct and it had directed the plaintiff to file a motion, within thirty (30) days, restating the relief sought. In fact, a few days before the entry of this Order, the plaintiff had filed a new brief in Support of his Motion for Judgment and Fees [10]; this pleading had not been submitted to the Court prior to its issuance of the above-described Order. In this brief, the plaintiff provided the information that the later-issued Order had requested.

another attorney with experience in FDCPA cases, Robert Allen Kaiden. Mr. Kaiden attests to the reasonableness of Mr. Feagle's fee. (Pl.'s Br. in Supp. of Mot. for J. and Fees [10] at 13, Feagle Aff. [10], Kaiden Aff. [10].)

In response, defendant notes that it viewed this litigation as a nuisance suit and settled the action for a nuisance value of $750, citing *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) and *Farrar v. Hobby*, 506 U.S. 103 (1992). Defendant argues that there should be no award of attorney's fees when an attorney has accomplished only a *de minimis* result. (Def.'s Resp. to Pl.'s Mot. for Entry of Final Judgment and Award of Costs and Attorney Fees [13 at 3-4].) Defendant contends that a $750 award is *de minimis* and that a lawsuit predicated on "minor technical violations" of the FDCPA does not rise to the level of a compelling social cause that would serve any public purpose. (*Id.*) Defendant further avers that the time expended and the hourly rate are excessive, given "the seeming use of cookie cutter forms" by plaintiff's counsel. (*Id.* at 2.) Defendant argues that plaintiff's counsel apparently relied on forms generated by other lawyers, as evidenced by the incorrect filing of a brief in another case. Accordingly, defendant expresses uncertainty at the time expended. (*Id.*) In short, defendant requests that no fees be awarded.

On May 4, 2006, plaintiff filed a Reply Brief [14], arguing that

6

defendant's request for the Court to deny all attorney's fees was *per se* unreasonable. Plaintiff's counsel also indicated that he had expended an additional 4.3 hours drafting the Reply Brief. Accordingly, he requested that the Court award him **$1,139.50** for that additional effort, for a total revised attorney fee of **$4,849.50**.[5] (Id. at 11.) Plaintiff's counsel submitted his own affidavit attesting to the reasonableness of the time he spent drafting his reply. (Feagle Second Aff. [14]).

## DISCUSSION

### I. Attorney's Fees

#### A. Standard

Defendant has cited to no case in which a court refused to award attorney's fees in an FDCPA case, and the Court knows of no such case. Plaintiff received some relief in the litigation, albeit arguably *de minimis*, and the Court concludes that it should award some attorney's fees to his counsel.[6] Congress, which sought to deter

---

[5] Plaintiff also agreed to subtract the time spent preparing his Motion to Strike from his total hours and the above figure represents that 0.9 hour reduction. (Pl.'s Rep. Br. [14] at 9). Specifically, the original fee request of $3,948.50 plus $1,139.50 (Reply Brief) minus $238.50 (.9 hour spent on motion to strike).

[6] That said, the Court has seen several FDCPA cases in recent years in which the parties settle for a small amount of damages, but leave the question of attorney fees--which requested fee usually exceeds by many magnitudes the agreed damages--up to the Court. It is a practice that requires the expenditure of substantial court resources for a relatively small amount of money. Indeed, in this

misconduct by debt collectors, has allowed for the recovery of attorney fees in FDCPA cases. (15 U.S.C. §§1692(e)(k)(a)). Most importantly to the Court, the parties' Agreement specifically requires defendant to pay, in addition to $750, "costs and attorney's fees as to be determined by the court." (Def.'s First Offer of J.[2].) The only question for the Court is the appropriate amount of fees.

To determine the proper amount of fees, the Court must multiply the hours "reasonably expended" on the case by a "reasonable hourly rate." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). *See also, Ass'n of Disabled Am. v. Neptune Designs, Inc.*, 469 F.3d 1357 (11th Cir. 2006) (discussing the standard for calculating attorneys' fees). The product of these two figures is commonly referred to as the "lodestar." *Neptune Designs*, 469 F.3d at 1359. The lodestar is presumptively reasonable, but may be adjusted based on a number of factors, such as the degree of plaintiff's

---

present case, the Court's own time spent resolving this dispute on attorney's fees has exceeded, by many hours, the time that plaintiff's counsel claims to have spent in litigating the entire case.

As the attorney's fees in most FDCPA cases usually reflect a much larger amount of money than the damages award, the amount of those fee are necessarily the most important issue in the case to both parties. As such, the Court is hopeful that settlement agreements in the future will resolve this central dispute in the litigation.

success in the suit. *Id.; Norman*, 836 F.2d at 1299.

B. <u>Reasonable Hourly Rate</u>

A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.3d at 1299. Plaintiff's counsel requests a fee of $265 per hour (Pl.'s Br. in Supp. of J. and Fees [10] at 10). In support of this fee, plaintiff's counsel cites several orders from judges in this district, including the undersigned, that grant him a $265 rate. (*Id.* at 10-12.) Plaintiff's counsel candidly acknowledges that all cases in which he has received this rate were uncontested or the result of a default judgment. (*Id.* at 11.) That fact is significant because, if there is no opposition to a requested rate from opposing counsel, a court would typically decline to advocate for the non-opposing party and *sua sponte* reduce the requested rate. Likewise, if a defendant has defaulted, a court will frequently accede to the rate requested by the plaintiff's counsel, unless that rate is clearly out of line. *See Deangelo v. Brevard Sec. Specialists, Inc.*, 2007 WL 45784 (M.D. Fl.).

In short, plaintiff's counsel has received a $265 hour rate in several recent uncontested cases. On October 8, 2004, in the last case in which his fee rate was contested, however, plaintiff's counsel was awarded a $195 hourly rate, which was the rate he

9

requested in that case. *See Turner v. NCO Financial System*, 1:03-cv-2712-RWS, Order of October 8, 2004 [10].

In addition to citing awards in the above-described cases, plaintiff's counsel has also submitted his own affidavit and an affidavit by Robert Allen Kaiden.[7] (Pl.'s Br. in Supp. of Mot. for J. and Fees [10] at 13.) Plaintiff's counsel, Mr. Feagle, states that, to his knowledge, the rates charged by attorneys in the Atlanta area on similar cases range from $150 to $400 per hour. (*Id.* at ¶ 10.) Mr. Kaiden states that he has been practicing for about the same period of time as Mr. Feagle. (Kaiden Aff. ¶¶ 5-7 [10], Feagle Aff. ¶¶ 3-4 [10].) According to Mr. Kaiden, his own rate is $250 per hour, and he believes Mr. Feagle's requested rate of $265 per hour is reasonable, based on Mr. Feagle's experience. (*Id.* at ¶¶ 28-29.)

Although these affidavits are instructive, they are not determinative. *See Norman*, 836 F.2d at 1299. *Norman* states: "[e]vidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such

---

[7]. Plaintiff also urges the Court to take judicial notice of affidavits provided in another unpublished case, but plaintiff has not provided these to the Court. If a party wishes a court to consider such documents, the party should provide these documents to the Court as exhibits. It is the burden of the moving party to show that the rate requested is reasonable. *Loranger*, 10 F.3d at 782.

as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample on which the expert has knowledge." 836 F.2d at 1299.

Further, although the opinions of Mr. Kaiden and of counsel as to the appropriateness of counsel's requested rate are instructive, their opinions should not be accorded more weight than the opinion of defendant's counsel, who notes that he has charged his own client a lower hourly rate than plaintiff requests. See Def.'s Resp. at 2(c) n. 1, stating that defendant's counsel is being paid at a rate of $230 per hour to defend this claim.

Plaintiff's counsel objects to use of defense counsel's rate in calculating the hourly rate, noting that defense counsel was not being paid on a contingency basis and, hence, his rate should be lower than an attorney whose compensation depended on his success in the action. (Pl.'s Rep. Br. [14] at 2.) In announcing its now often-cited test, the Fifth Circuit indicated in 1974 that contingency is a factor that can be considered in determining the lodestar amount. See Johnson v. Ga. Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) (listing the factors that may be helpful to the court in determining the lodestar amount). Applying the reasoning of the Supreme Court in the more recent City of Burlington v. Dauge, 505 U.S. 557, 566 (1992), however, it is apparent that the Court is not required to increase the hourly rate or ultimate fee

11

simply because plaintiff's counsel will receive a fee only if he succeeds in receiving a damages award in some amount for his client.

In *City of Burlington*, the Supreme Court discussed the enhancement of the lodestar amount due to the contingent nature of the fee and stated that enhancement of an award based on contingency is "not consistent with our general rejection of the contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee."[8] *City of Burlington*, 505 U.S. at 566. The Supreme Court reasoned that the contingent fee model was not desirable because if the court based recovery on the risk assumed by the attorney in taking the case, the court would be indirectly rewarding attorneys for cases lost and encouraging them to bring frivolous suits. That is, the more cases an attorney loses, the riskier the next case becomes, and, according to plaintiff's counsel's argument, the greater should be the reward when the attorney finally wins a case. Such a system would, however, reward the least successful

---

[8] Some courts have reasoned that in *City of Burlington*, the Supreme Court is merely holding that contingency cannot be the only reason for enhancing an award. *See Kenny A. Ex Rel. Winn v. Perdue*, 454 F.Supp. 2d 1260, 1288 (N.D. Ga. 2006) (Shoob, J.)(Stating, "[a] lodestar enhancement cannot be based on contingency alone.") However, in this case the reasoning of the Supreme Court for not enhancing an award applies. Additionally, in *Perdue*, Judge Shoob cited several reasons for enhancing the award including the fact that plaintiffs' counsel "brought a higher degree of skill . . . to this litigation than the Court has seen displayed . . . in any other case during its 27 years on the bench," and that plaintiffs' counsel had expended $1.7 million in litigating the suit.

12

lawyers.  Thus, the Supreme Court reasoned that the contingency fee model was contrary to the purpose of fee-shifting statutes, which exists to ensure representation in cases where the damages awarded would not be large enough to cover attorney's fees.  *Id.*

Under the Supreme Court's analysis, the contingent nature of the fee would factor into the calculation of attorney's fees only if an agreed-upon contingent fee rate would *exceed* a fee that would otherwise be arrived at by calculating the hourly rate. That is, the Supreme Court indicated that a fee-shifting statute should not act to penalize an attorney who had been guaranteed a certain percentage of the award, if utilizing an hourly rate methodology would result in the award of a lesser sum.  *City of Burlington*, 505 U.S. at 566.

The Supreme Court's limited exception, however, will rarely arise in a FDCPA case because, in such cases, an attorney will seldom recover a greater fee if granted a percentage of the award, instead of a traditional hourly rate.  For example, in most cases wherein a plaintiff's lawyer utilizes a contingency fee arrangement with his client, the former will usually take up to 40% of a damages award as his fee.  Forty percent of $750, the settled-upon damages award in this case, is $300. Yet, plaintiff's counsel seeks fees of over $4000 in this case.  Thus, applying a contingency fee calculation here would greatly diminish the award that plaintiff's counsel could receive under an hourly rate calculation.  Accordingly, as

13

consideration of any contingency rate would lower counsel's award, the existence of any contingency[9] in his receipt of a fee disappears from the equation.

C.  Calculation of Hourly Rate in This Case

A reviewing court "'is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" *Loranger*, 10 F.3d at 781 (citing *Norman*, 836 F.2d at 1303). In examining other fee awards in similar cases, the Court has found that the relevant range is $175-$380 per hour. *See Fisher v. Trutech, Inc.*, 2006 WL 3791977 (M.D. Ga.) (Royal, J.) (awarding $200 per hour in an ERISA case to an attorney with 20 years experience), *Gill v. Bluebird Body Co.*, 353 F.

---

[9]  Moreover, as a practical matter, there is much less contingency for a plaintiff's attorney in an FDCPA case than exists in a traditional personal injury case, for example. In the latter, there is almost always a risk that the plaintiff will lose and receive no award, meaning that his attorney will receive no attorney's fees. In contrast, this Court cannot remember in recent years an FDCPA case in which the defendant has chosen to actually litigate the case. Instead, the defendant will typically recognize that the cost of defense will greatly exceed the amount of damages that the defendant would likely be assessed. Having made that calculation, the defendant will typically offer a small amount of money, such as was offered here, to settle the case. Once the plaintiff's attorney receives <u>any</u> award for his client, no matter how small, he then seeks attorney's fees at the hourly rate that prevails in his community for attorneys with similar experience. Thus, any contingency as to attorney's fees in a FDCPA case is, in the Court's experience, more theoretical than real.

Supp.2d 1265, 1270 (M.D. Ga. 2005) (Royal, J.) (awarding $225 per hour to an attorney with 19 years experience in consumer rights cases), *Casden v. JBC Legal Group, P.C.*, 2005 WL 165383 (S.D. Fl.) (Seltzer, Mag. J.) (citing rates from $195-$325 and finding a rate of $250 reasonable for an attorney with 18 years experience in an FDCPA case), *Webster Greenthumb Co. v. Fulton County Ga.*, 112 F.Supp.2d 1339 (N.D. Ga. 2000) (Thrash, J.) (citing affidavits from plaintiff and defendant attesting that rates ranging from $180-$380 were appropriate, the highest rate cited as having been awarded by the Court was $275), *Wilkes v. Polk County Ga.*, 952 F.Supp. 808, 812 (N.D. Ga. 1997) (Murphy, J.) (awarding $175 per hour in a Civil Rights case to an attorney with 20 years experience), and *Williams v. Bd. of Comm'rs of McIntosh County*, 938 F.Supp. 852, 858-59 (S.D. Ga. 1996) (Alaimo, J.) (awarding $175 per hour in a gerrymandering case to an attorney with 25 years experience).

Additionally, the Court may consider the twelve factors discussed in *Johnson*, and either increase or decrease the attorney's fees based on the existence of one or more of these factors.[10]

---

[10] These factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the degree of skill necessary to serve the client properly, (4) the attorney's inability to accept other employment because he accepted the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount of damages involved and the relief obtained, (9) the experience, reputation, and ability of the attorney, (10) the undesirability of

*Loranger*, 10 F.3d at 781 n. 6. Two of these factors focus on the amount of damages involved and the relief obtained. As noted *supra*, plaintiff accepted a nominal amount--$750 in damages--in settlement of the case. Further, the legal issues were not difficult in the case. Finally, as noted, defendant has argued that the Court should consider the fact that plaintiff's counsel initially submitted a brief from the wrong case as an indication of the quality of work performed. (Def.'s Resp. [13] at 2(b)). The Court agrees that this mistaken filing showed an inattention to detail and created more work for the Court and for defendant's counsel, and it has factored this consideration into its determination of plaintiff's hourly rate.

Extrapolating from all of the above considerations, the Court concludes that **$200 per hour** is a reasonable rate to compensate counsel for his work done in this particular case.

C.   Hours Reasonably Expended on the Case

Plaintiff has submitted an itemized bill of the time spent on the case. (Pl.'s Bill [10]) Plaintiff's counsel claims a total of 18.3[11] hours. (*Id.*, Pl.'s Rep. Br. [14] at 9, 11.)

---

the case, (11) the nature and length of the attorney's professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

[11] Plaintiff's counsel claims an initial 14.9 hours spent in on the case, plus 4.3 hours spent in preparation of Plaintiff's Reply Brief, less the 0.9 hours spent on preparing the Motion to Strike, for a total of 18.3 hours.

16

All of plaintiff's counsel's time entries are detailed and well-documented. (Pl.'s Bill [10]) With only one exception, the Court finds the hours claimed by plaintiff's counsel to be reasonable and necessary. That one exception is the billing for the preparation and filing of plaintiff's Motion to Reopen Case [6]. Plaintiff's counsel has requested attorney's fees for the one-half hour he spent drafting the motion to reopen. See Mot. For Entry of Final J. [10-2, attachment to Feagle Affidavit]. As this pleading was largely incorrect and attached a brief from another case, the Court has deducted this one-half hour of time from its calculation. See Norman, 836 F.2d at 1301 (noting that "'excessive, redundant or otherwise unnecessary' hours should be excluded from the amount claimed"). Accordingly, the corrected amount of time awarded to plaintiff's counsel is the amount he has requested--18.3 hours--less .5 hours, for a total of **17.8 hours.**

D.   The Lodestar

Adding the reimbursable time, plaintiff should be compensated for 14.9 hours on the case, plus 4.3 hours preparing plaintiff's Reply Brief, less .5 hours preparing the Motion to Reopen and less .9 hours spent on the Motion to Strike. These hours total 17.8 hours.

Multiplying plaintiff's counsel's reasonable rate--$200--by the hours reasonably expended--17.8--the lodestar sum in this case is **$3,560.** See Knight, 824 F. Supp. at 1029 ("there is a strong

17

presumption that the lodestar amount represents the reasonable fee award") (citing *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 566 (1985)).

## II. Costs

Plaintiff requests $314.35 in costs and expenses. (Pl.'s Br. in Supp. of J. and Fees [10] at 14.) Costs and expenses are recoverable under 15 U.S.C.§ 1692(k)(a). See *Dowdell v. City of Apopka,* 698 F.2d 1181, 1188 (11th Cir. 1983). Moreover, the terms of the parties' Agreement require defendant to reimburse plaintiff for his costs and litigation expenses. (Def.'s First Offer of J. [2], Pl.'s Br. in Supp. of Mot. for J. and Fees [10].)

The proper amount of costs and expenses is "determined by the necessities of the case." *Dowdell,* 698 F.2d at 1191. Costs are generally recoverable if they were "reasonably incurred." *Id.* Plaintiff has detailed his costs and defendant does not contest them. (Br. in Supp. of Mot. for J. and Fees [10] at 14 n.12., Def. Resp. [13].) The items on the bill, such as a filing fee ($250), service of process fees ($60), and postage ($4.35), are clearly reasonable and recoverable. (*Id.*) See *Dowdell,* 698 F.2d at 1192.

Accordingly, the Court finds that plaintiff is entitled to **$314.35** in costs and expenses.

18

AO 72A
(Rev.8/82)

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part plaintiff's Motion for Entry of Final Judgment Including Award of Attorney Fees and Costs [10]. The Court awards plaintiff **$3,560** in attorney's fees, and **$314.35** in costs and expenses.

SO ORDERED, this _19_ day of March, 2007.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)